# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LORA PENNINGTON**                                                                       **PLAINTIFF**

**VS.**                               No. 4:20-cv-00950 PSH

**KILOLO KIJAKAZI,**[1] **Acting Commissioner,**
   **Social Security Administration**                                      **DEFENDANT**

# ORDER

Plaintiff Lora Pennington ("Pennington"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI), contends the Administrative Law Judge's (ALJ) decision that she is not disabled is not supported by substantial evidence. Specifically, Pennington contends the ALJ erred in: (1) failing to give good reasons for finding the opinions of Dr. Michael Calhoun ("Calhoun"), a treating specialist, and Dr. Jerry Harvey ("Harvey"), a treating physician, unpersuasive; and (2) failing to properly evaluate the

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, and is the proper defendant. Fed. R. Civ. P. 25(d).

relevant evidence in finding that Pennington's subjective allegations of symptoms were not consistent with the evidence of record. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on November 5, 2019. The relevant period to be examined is from January 11, 2018, the alleged onset date, through December 26, 2019, the date of the ALJ's decision.

*The Administrative Hearing:*

Pennington testified as follows: Pennington was 46 years old, 5'6", and weighed 152 pounds at the time of the hearing. She has a GED, a CNA license, and training as a rehabilitation aide and medication technician. Pennington last worked in January 2018 as an accounts payable clerk and ended her employment due to neck, back, and arm problems that resulted in her inability to lift and type. She also suffered from forgetfulness. Her past work was seated and required her to lift up to twenty pounds.

Pennington underwent lumbar fusion surgery at L5-S1 in January 2018. Following the surgery, Pennington still experienced pain which limited her abilities. At the time of the hearing, Pennington was receiving injections in her lumbar spine for treatment. She had previously been given injections and ablations in her neck, and she was diagnosed with fibromyalgia in 2016. Pennington also suffered from arthritis in her back that radiated to her shoulders and fingers and made it difficult to grasp and

type. Additionally, Pennington had a protrusion in her back, on the left side, and narrowing on the right side. According to Pennington, her neck was not working correctly, and the treatment plan was to address her neck problems after more work was done on her lumbar spine. She was scheduled for another injection in her lower back about a week after the hearing. Pennington asserted her spine issues, fibromyalgia, pain, and arthritis prevented her from performing substantial gainful work activities.

On questioning from her attorney, Pennington testified that the ablations in her neck did not provide much relief. Overhead reaching was a problem due to shoulder pain, and using her hands in front caused neck pain, according to Pennington. She took Percocet for pain and Gabapentin for nerve pain, which she rated as 30% effective, and she took Duloxatine and Lyrica for her fibromyalgia. Side effects from her medications were fatigue, nausea causing her to vomit once or twice a month, and drowsiness. Although the medications helped, Pennington rated her pain at 7-8 on a scale of 1-10. The arthritis affected her hands, her knees were impaired such that she could not bend down or squat, and she had restless leg syndrome, affecting her sleep. She estimated she could lift no more than five pounds, could use her hands for five to ten minutes, sit or stand for five to ten minutes, and walk one hundred feet.

Pennington described limited daily activities, beginning with difficulty getting

out of bed. Activities which she could do, albeit slowly, included making a light meal, doing a load of dishes, talking on the phone, playing with her kittens, bathing and dressing herself, driving to appointments and visiting friends "for a little bit." Pennington estimated that she spent five hours a day in her recliner, and had only two or three good days each month. Pennington credited her boyfriend for help with mopping and sweeping, and said they ate out occasionally and travel once a month to visit family out of town.

Stephanie Ford ("Ford"), a vocational expert, testified. Ford described Pennington's past relevant work as sedentary with an SVP[2] of five. The ALJ posed a hypothetical question to Ford, first asking her to assume a worker of Pennington's age, education, and experience, who could perform sedentary work with the following restrictions: no climbing of ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach overhead bilaterally; and should avoid concentrated exposure to excessive vibration. Ford testified that such a worker could perform Pennington's past relevant work. Ford stated that there would not be jobs available if the hypothetical worker

---

[2] SVP is a rating by the Social Security Administration ("SSA") of Specific Vocational Preparation, indicating how long it takes a worker to learn how to do his or her job at an average performance level. An SVP of 5 indicates a worker would learn the job in six months to one year. Such a job is designated as skilled work by SSA.

were off task 20% of the day.

*ALJ's Decision:*

In his December 26, 2019 decision, the ALJ determined that Pennington had the following severe impairments: degenerative disc disease and degenerative joint disease of the cervical spine with spondylosis; degenerative disc disease of the lumbar spine status-post fusion; and fibromyalgia. The ALJ discussed the following impairments which he deemed non-severe: tachycardia, xerosis, irritable bowel syndrome, chronic sinusitis and mucosal disease, vitiligio, insomnia, restless leg syndrome, and chronic pain syndrome. The ALJ also found the following were non-medically determinable impairments: pelvis tilt, lupus, and neuropathy. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Pennington had no limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself.

The ALJ found that Pennington did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered whether Pennington met Listing 1.02 or 1.04.

The ALJ determined that Pennington had the residual functional capacity ("RFC") to perform sedentary work with the restrictions which mirrored those detailed

in the first hypothetical question posed to Ford. Citing the appropriate factors, he assessed Pennington's subjective allegations and found that her statements were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26). The ALJ also noted that Pennington's subjective allegations "are only partially consistent with the objective evidence of record." (Tr. 27). The ALJ discussed the medical evidence, with an emphasis on the opinions offered by Drs. David Burke ("Burke"), Calhoun, and Harvey. Burke's opinion that Pennington could perform light work was partially persuasive, according to the ALJ, and he addressed the opinions of Calhoun and Harvey as follows:

> Following the claimant's fusion surgery, Michael Calhoun, M.D., provided multiple opinions regarding the claimant's recovery and her ability to return to work. More specifically, Dr. Calhoun first found that the claimant would be able to return to work in May 2018. Once evaluated in May 2018, he then opined that she was to remain off work for an additional month. By August 2018, Dr. Calhoun found it doubtful that the claimant would ever work again, in any capacity. This opinion is unsupported by the provider's own objective findings. I find this opinion unpersuasive due to its inconsistency with the objective evidence of record. For example, Dr. Calhoun referred the claimant for an imaging study, and an MRI of the lumbar spine showed only a mild loss of disc space height, and mild foraminal narrowing. Additionally it is not supported with other objective testing. Next, his opinion that the claimant can NEVER reach up or down is lacking any support in light of the claimant's activities of daily living which include caring for a pet, managing her own personal care, doing chores and cleaning, mopping, dishes, preparing meals, working on the computer and driving independently. Many of these activities cause one to reach up or down repeatedly. Additionally the claimant eats out with her boyfriend, visits friends and talks on the telephone. This opinion is also contradicted by

> State agency medical consultants, which found that the claimant remained capable of performing sedentary work with additional restrictions.
>
> Finally, Jerry Harvey, D.O., a treating source, also provided a medical opinion. In Dr. Harvey's opinion, the claimant's impairments would prevent her from standing for six to eight hours, prevent her from sitting upright for six to eight hours, and would accordingly require her to lie down during the day. He also found that the claimant would have additional reaching and handling limitations, such as only being able to reach above the shoulders or handle objects with her fingers up to 30 percent of the time. Dr. Harvey further opined that the claimant could lift/carry less that five pounds, never squat, and never travel alone. He ultimately concluded that the claimant would be unable to continue or resume work at her current or previous employment. As an initial matter, the doctor's statement indicating the claimant is "unable to work" is not a medical opinion, but rather an administrative finding dispositive of a case. These issues are reserved to the Commissioner, and as such are not entitled to any significant evidentiary weight. I find this opinion unpersuasive due to its inconsistency with the objective evidence of record. Furthermore, the opinion is unsupported by objective testing, it is contradicted by other opinions, and the provider did not have the opportunity to review other evidence of record. In terms of supportability, Dr. Harvey's examination records show that an imaging study failed to reveal any significant neural impingement, and physical examinations of the claimant were generally within normal limits. I also note that the opinion includes handling/fingering limitations, yet examination records note no orthopedic abnormalities during more recent examinations. As noted above, this opinion is also contradicted by more persuasive and better-supported opinion evidence. For example, David Burke, M.D., also opined that the claimants's impairments would affect her ability to work. However, Dr. Burke found that the claimant remained capable of performing light work, and the finding was based upon his examination of the claimant, as well as his review of the evidence of record.

(Tr. 28-29).

*Analysis:*

*Claim One – ALJ Error in Assessing the Opinions of Calhoun and Harvey*

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Pennington filed her claim on June 6, 2018. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
> 
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Pennington does not contend the ALJ neglected to discuss the supportability and consistency of the opinions of Calhoun and Harvey. Instead, the argument is that the ALJ failed to give good reasons for his conclusions regarding the opinions of Calhoun and Harvey.

Pennington faults the ALJ for relying heavily on the opinion of Burke. Initially, the Court notes that Pennington correctly asserts that the ALJ erred in stating that Burke examined her. Burke in fact reviewed the medical records, and did not see Pennington. While this error detracts from the ALJ's analysis, it is not determinative, as the ALJ's assessment was not wholly dependent upon an in-person examination by Burke.[3] The Court's task is to assess the ALJ's treatment of Calhoun, Harvey, and Burke's opinions, acknowledging that Calhoun and Harvey were treating physicians while Burke was a non-treating, non-examining physician.

Regarding Burke's opinion, it is significant that the ALJ did not wholly embrace Burke's findings. Instead, the ALJ noted "some inconsistency in the record."

---

[3] At the hearing there was some confusion over Burke's role in Pennington's treatment. Pennington testified that she was given short-term disability which was converted to long-term disability until August 2019. Burke was the physician employed by the insurance company to review Pennington's records. Burke's findings are recorded at pages 774-779 of the transcript. Burke reviewed her treatment records and opined that she could perform light work, resulting in a termination of her long-term disability. (Tr. 64-65).

(Tr. 28). Thus, the ALJ did not agree with Burke's conclusion that Pennington could perform light work, nor did he agree that Pennington was capable of constant standing and walking. The ALJ explicitly noted examination findings of an antalgic gait, reduced extremity strength, and reduced range of motion in the spine. In summary, the ALJ found Burke's opinion only partially persuasive.

Calhoun's August 2018 opinion that it was doubtful Pennington would ever work again, was deemed unpersuasive "due to its inconsistency with the objective evidence of record." (Tr. 28). The ALJ cited findings of an MRI requested by Calhoun as inconsistent with Calhoun's opinion. The MRI reflected mild multilevel spondylitic changes with no evidence of disc herniation or significant canal or foraminal stenosis. (Tr. 670). The ALJ's reliance on objective imaging was proper, as was his citation to the lack of other objective measurements to support Calhoun's opinion.

Calhoun also opined Pennington could never reach up above her shoulders and could never reach down towards the floor. (Tr. 309). The ALJ found this restriction inconsistent with Pennington's daily activities, which he stated would require reaching up or down repeatedly. Daily activities cited by the ALJ included caring for a pet, personal care chores, working on the computer, and driving. Pennington argues that these daily activities, and others she does, do not require her to reach above shoulder

level or to the floor.  Docket entry no. 14, page 17.  The restriction, however, did not specify reaching *to* the floor – Calhoun opined she could never reach *towards* the floor.  The Court cannot definitively find that Pennington's daily activities fell within the limits of Calhoun's restrictions.  Indeed, personal hygiene tasks, such as brushing teeth or hair, seem to necessarily require reaching above shoulder height, and many daily activities entail reaching towards the floor.  The ALJ's determination that Calhoun's restrictions were at odds with Pennington's daily activities is not erroneous.  While the ALJ could have noted Calhoun to be a specialist, the ALJ adequately examined the consistency and supportability of Calhoun's opinion, and complied with the relevant regulations.  There is no error in the ALJ's analysis of Calhoun's opinions.

The ALJ found Harvey's August 2019 conclusions unpersuasive due to inconsistency with the objective evidence of record and due to a lack of support from objective testing.  The ALJ cited an imaging study which failed to reveal any significant neural impingement and physical examinations within normal limits.  A CT of the cervical spine, from May 2019, showed "no significant neural impingement on the right at C5-6 or C6-7." (Tr. 723).  Finally, the ALJ noted that Harvey opined Pennington had handling/fingering limitations while recent examinations showed no orthopedic abnormalities.  Harvey's examinations from December 2018 and March

11

2019 were unremarkable.[4] (Tr. 768-773). The ALJ's treatment of Harvey's opinion complied with the regulations, and it is not the role of the Court to reweigh the evidence. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

In summary, the ALJ's treatment of the opinions of Calhoun and Harvey was proper. This was not an instance where the ALJ fully accepted the opinion of Burke, the non-examining physician, over Calhoun and Harvey. Instead, the ALJ partially approved of Burke's opinion, and was also heavily influenced by the objective medical records. There is no merit to the first claim advanced by Pennington.

*Claim Two – ALJ Error in Failing to Properly Evaluate Pennington's Subjective Allegations.*

As part of assessing the claimant's RFC, the ALJ is required to evaluate the subjective statements of the claimant. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. *See* Social Security Ruling ("SSR") 16-3p. In making the

---

[4] Harvey's December 2018 physical examination reflected "no orthopedic abnormalities" and in his review of symptoms Harvey recorded Pennington was "negative for arthritis, trauma, joint swelling, back pain or neck pain." (Tr. 768). The March 2019 progress notes also found no orthopedic abnormalities, while Harvey noted right knee pain in his review of musculoskeletal symptoms. (Tr. 770-771).

latter evaluation, the ALJ must consider all the evidence, including information about the claimant's prior work record, and evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

As previously noted, the ALJ found Pennington experienced the symptoms she alleged, including pain, but also found "her impairments are not as limiting as alleged." (Tr. 26). In reaching this conclusion, the ALJ cited the objective medical evidence, which is clearly a relevant factor in the subjective allegation analysis. Imaging studies showed mild multilevel spondylitic changes with no evidence of disc herniation or significant canal or foraminal stenosis. The ALJ properly noted this objective medical evidence. Pennington faults the ALJ for concluding she had no musculoskeletal edema or tenderness, a normal gait, and a normal range of motion. The Court does not interpret the ALJ's decision to endorse these conclusions. While the ALJ cites evidence of normal findings, he also acknowledged "other examination

findings which showed an intermittently antalgic gait pattern, reduced extremity strength, as well as a reduced range of motion in the spine." (Tr. 28). The ALJ credited Pennington's subjective allegations to a degree, resulting in his rejection of Burke's opinion that Pennington could perform light work. The ALJ's RFC assessment of sedentary work with numerous restrictions, therefore, was consistent with some of Pennington's subjective allegations. In light of the imaging studies and the varying physical examination results, the Court finds no error in the ALJ's consideration of the objective medical evidence.

The ALJ also cited Pennington's treatment history, which showed improvement at various relevant times, and her daily activities. While Pennington disagrees with the ALJ's analysis, these are valid factors to be considered. Overall, the evaluation of Pennington's assertions was adequate and supported by substantial evidence.

The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Pennington's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE